24-5500

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ISAAC LEWIS,
Plaintiff-Appellee,

v.

B. GUITERREZ, et al.,
Defendants-Appellants,

ATTORNEY GENERAL OF THE STATE OF NEVADA,
Defendant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:22-cv-00010-CLB

**DEFENDANTS-APPELLANTS'
EXCERPTS OF RECORD
VOLUME I
(ER0001-ER00018)**

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
(702) 486-3768 (fax)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Veronica Avila, Albert Catellan,*
*Benedicto Gutierrez, and Vanessa Nicholson*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ISAAC LEWIS,<br><br>              Plaintiff,<br><br>  v.<br><br>B. GUTIERREZ, *et al.*,<br><br>              Defendants. | Case No. 3:22-CV-00010-CLB[1]<br><br>**ORDER DENYING MOTIONS FOR RECONSIDERATION**<br><br>[ECF Nos. 81, 84] |

Before the Court is Defendants Veronica Avila, Albert Castellan, Benedicto Gutierrez, and Vanessa Nicholson's (formerly Rodriguez) (collectively referred to as "Defendants") motion for reconsideration. (ECF No. 81.) Plaintiff Isaac Lewis ("Lewis") responded, (ECF No. 83), and Defendants replied, (ECF No. 86). Also pending before the Court is Lewis's motion for reconsideration, (ECF No. 84). Defendants responded, (ECF No. 88), and Lewis replied, (ECF No. 89). For the reasons discussed below, the motions, (ECF Nos. 81, 84), are denied.

I.  **BACKGROUND**

Lewis is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On January 10, 2022, Lewis filed a civil rights complaint ("Complaint") under 42 U.S.C. § 1983 for events that occurred while Lewis was incarcerated at the High Desert State Prison ("HDSP"). (ECF No. 1-1.)

On January 18, 2022, the District Court screened the Complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 3.) Lewis was allowed to proceed on an Eighth Amendment deliberate indifference to serious medical needs regarding dental treatment against Defendant Gutierrez, John Doe HDSP Head Dentist, and Jane Doe HDSP Dental

---

[1]  The parties voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 37.)

1  assistant, when he learned their identities. (*Id.*)
2    On April 23, 2024, Lewis filed his motion for summary judgment. (ECF No. 61.) On
3  June 10, 2024, Defendants filed their motion for summary judgment. (ECF No. 66.)
4  Ultimately, the Court denied each motion for summary judgment, finding genuine issues
5  of material fact exist as to Lewis's allegations of delayed treatment for his dental needs.
6  (ECF No. 75.) Defendants and Lewis now each move for reconsideration of the Court's
7  order denying the motions for summary judgment.

8  **II.    LEGAL STANDARD**

9    A motion to reconsider must set forth the following: (1) some valid reason why the
10  court should revisit its prior order; and (2) facts or law of a "strongly convincing nature"
11  in support of reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180,
12  1183 (D. Nev. 2003). Reconsideration may be appropriate if (1) the court is presented
13  with newly discovered evidence, (2) has committed clear error, or (3) there has been an
14  intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah County, Or. v.
15  ACandS*, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); *Kona Enters., Inc. v. Estate of Bishop*,
16  229 F.3d 877, 890 (9th Cir. 2000). A motion for reconsideration is properly denied where
17  it presents no new arguments. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir.
18  1985). As the case law indicates, motions to reconsider are granted rarely. *See, e.g.,
19  School Dist. No. 1J*, 5 F.3d at 1263.

20  **III.   DISCUSSION**

21    Defendants seek reconsideration of the Court's order denying Defendants' motion
22  for summary judgment, arguing that there was no significant delay in treatment for Lewis,
23  thus there was no constitutional violation and because there was no constitutional
24  violation, Defendants are entitled to qualified immunity. (ECF No. 81.) Lewis seeks
25  reconsideration of the Court's order denying his motion for summary judgment, arguing
26  no genuine issues of material fact exists, as "Defendants clearly denied [Lewis] treatment
27  he was [e]ntitled to which resulted in further pain, suffering and loss of teeth." (ECF No.
28  84.)

Each motion appears to be an attempt to re-argue the original motions for summary judgment, which the Court found presented genuine issues of material fact for a jury to decide. However, neither Defendants nor Lewis offer any newly discovered evidence, the Court did not commit clear error, nor was the decision manifestly unjust, and there is no intervening change in controlling law. Further, to the extent the parties are attempting to raise new arguments, this is improper. *See Kona Enters., Inc.*, 229 F.3d at 890 (a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). In sum, the Court does not find reconsideration appropriate and denies the motions accordingly.

## IV.   CONCLUSION

Consistent with the above, **IT IS ORDERED** that Defendants' motion for reconsideration, (ECF No. 81), is **DENIED**.

**IT IS FURTHER ORDERED** that Lewis's motion for reconsideration, (ECF No. 84), is **DENIED**.

**DATED**: September 24, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ISAAC LEWIS, | Case No. 3:22-CV-00010-CLB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**[1] |
| v. | |
| B. GUTIERREZ, *et al.*, | [ECF Nos. 61, 66] |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Isaac Lewis ("Lewis") against Defendants Benedicto Gutierrez, Veronica Avila, Albert Castellan, and Vanessa Nicholson (formerly Rodriguez) (collectively referred to as "Defendants"). Currently pending before the Court is Lewis's motion for summary judgment, (ECF No. 61). Defendants responded, (ECF No. 64), and Lewis replied, (ECF No. 65). Also pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 66, 68.)[2] Lewis responded, (ECF No. 71), and Defendants replied. (ECF No. 73.) For the reasons stated below, Plaintiff's motion for summary judgment, (ECF No. 61), is denied and Defendants' motion for summary judgment, (ECF No. 66), is denied.

**I.    BACKGROUND**

**A.    Procedural History**

Lewis is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On January 10, 2022, Lewis filed a civil rights complaint ("Complaint") under 42 U.S.C. § 1983 for events that occurred while Lewis was incarcerated at the High Desert State Prison ("HDSP"). (ECF No. 1-1.)

---

[1] The parties have voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 37.)

[2] ECF No. 66 is the motion for summary judgment. ECF No. 68 consists of Lewis's medical records filed under seal.

On January 18, 2022, the District Court screened the Complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 3.) Lewis was allowed to proceed on an Eighth Amendment deliberate indifference to serious medical needs regarding dental treatment against Defendant Gutierrez, John Doe HDSP Head Dentist, and Jane Doe HDSP Dental assistant, when he learned their identities. (*Id.*)

Defendant Gutierrez filed his answer on October 24, 2022. (ECF No. 12.) On February 24, 2023, Lewis filed a motion to substitute two of the Doe Defendants as Defendants Avila and Castellan, (ECF No. 32), which the Court granted, (ECF No. 33). Thus, on March 31, 2023, Defendants Avila and Castellan filed their joinder to the answer. (ECF No. 35.) On September 19, 2023, Lewis filed a motion for joinder of Defendant Nicholson (formerly Rodriguez), (ECF No. 54), and Defendants filed a non-opposition, (ECF No. 55). While a notice of acceptance of service was filed, (ECF No. 58), to date Defendant Nicholson has not filed an answer. On April 23, 2024, Lewis filed his motion for summary judgment. (ECF No. 61.) On June 10, 2024, Defendants filed their motion for summary judgment. (ECF No. 66.)

### B.     Undisputed Facts re: Summary Judgment

The following facts are undisputed: On July 5, 2017, upon intake with the NDOC, a dental classification was performed on Lewis. (ECF No. 68-2 at 116.) The classification showed "no dental care required or requires minimal routine comprehensive dental treatment. Has adequate masticatory function" and further reflected Lewis had no dental restrictions. (*Id.*)

On February 11, 2020, Lewis filed an emergency dental kite stating: "I have a toothache that is excruciating. I can't eat[,] I can't drink[,] and I CAN'T SLEEP. It's truly unbearable. Will you please pull it out ASAP because I'm honestly on the verge of calling a MAN DOWN this is an EMERGENCY. Please Help." (ECF No. 68-2 at 77 (emphasis in original); ECF No. 68-2 at 54, 77.) The response stated: "You have been scheduled to see the Dentist and you will be seen in the order of when your Kite was received. The list is very long so your patience is appreciated." (*Id.*) On March 3, 2020, Lewis filed a dental

1    kite stating he had been putting in requests for nearly a month about his teeth being in
2    excruciating pain and asking why he was not being seen. (ECF No. 68-2 at 47.) The
3    response stated he was receiving pain medication and he would be seen by dental. (*Id.*)
4    On March 4, 2020, Lewis filed another kite stating: "My tooth is killing me, I can't sleep I
5    struggle eating[.] It[']s constant [excruciating] pain[,] I've been kiting you about this for
6    over a month now, I'm suffering. Please help me with this pain & take this tooth out I'm
7    begging you." (ECF No. 61 at 36; ECF No. 68-2 at 38, 68.) The response to this kite
8    stated: "You are on naproxen and flexeryl (sic). We will get you to dental ASAP." (*Id.*)
9         The next day, March 5, 2020, Lewis filed another kite stating his tooth was hurting
10   him and that he was in excruciating pain. (ECF No. 68-2 at 48.) The response stated he
11   was on the list to be seen. (*Id.*) On March 8, 2020, Lewis filed another kite again reiterating
12   that it had been over a month since he first contacted officials about his dental problems
13   and the pain he was experiencing. (ECF No. 61 at 38; ECF No. 68-2 at 36, 66.) Lewis
14   also stated that while he was told he was receiving pain medication, he had not received
15   any pain medication. (*Id.*) On March 10, 2020, Lewis filed another kite regarding his tooth
16   pain stating that "the pain is to the pint that I'ma (sic) try to pull it myself." (ECF No. 61 at
17   40; ECF No. 68-2 at 37, 65.) The response stated: "No one is refusing to see you. You
18   are on the dental list to be seen." (*Id.*)
19        Lewis was transferred from ESP to HDSP on March 18, 2020. (ECF No. 66-1 at
20   3.) On March 19, 2020, Lewis was seen by a dentist and an extraction of tooth #16 was
21   performed. (ECF No. 68-2 at 102, 119.) On March 30, 2020, Lewis filed a dental kite at
22   HDSP stating that he has cavities that need filings and that he needed to be seen. (ECF
23   No. 61 at 45; ECF No. 68-2 at 87.) The response stated: "We are not seeing pt @ this
24   time but emergency let us[] know re-kite." (*Id.*) On April 23, 2020, Lewis filed a dental kite
25   that stated:
26        I came down from Ely for dental[,] when I saw dental I complained about my
          teeth hurting. They pulled 1 tooth and told me I'd be back the following week
27        to get another tooth pulled & a couple fillings. Why are you not seeing me
          anymore, my teeth hurt the cavities will soon start rotting causing me to lose
28

ER007                           ER007   3                        ER007

more teeth because of your lack of action. I'm in pain!!

(ECF No. 68-2 at 39, 60, 88.) The response, which was dated April 27, 2020, stated: "We haven't seen anybody until today. Do you see other people going to dental &/or just about anywhere? When it is your turn[,] you will be scheduled. *We don't need anymore kites*." (*Id.* (emphasis added).)

On May 23, 2020, Lewis filed another dental kite that stated:

> I don't understand, I was brought down here for dental 2 months ago. But your (sic) not seeing me & you took people from my unit to dental 2 weeks ago. My teeth hurt I'm in excru[c]iating pain and my dental problems are getting worse cavities are turning into rotten teeth that have to get pulled because your (sic) not seeing me or giving me the fillings I need!!"

(ECF No. 61 at 47; ECF No. 68-2 at 89.) In response, Lewis's request was stamped: "You will be scheduled and notified the date of the appointment." (*Id.*) On June 8, 2020, Lewis filed another dental kite stating: "What's goin (sic) on with my tooth? My tooth hurts. Will you please see me this year?" (ECF No. 61 at 49; ECF No. 68-2 at 90.) The kite was again stamped stating Lewis would be scheduled. (*Id.*) Lewis submitted another kite on June 10, 2020 again stating he was in pain and asking why he was not being seen. (ECF No. 68-2 at 40, 59.)

On July 1, 2020, Lewis was seen by dental and an extraction of tooth #2 was performed. (ECF No. 68-2 at 102, 118.) On July 5, 2020, Lewis kited stating: "My teeth are still hurting will you please see me for this problem the pain is unbearable." (ECF No. 61 at 51; ECF No. 68-2 at 91.) The response stated: "You are on the waiting list already. Don't rekite." (*Id.*) On August 1, 2020, Lewis kited stating:

> I don't understand why you show such blatant disregard for my teeth. You've been telling me that I have cavaties (sic) since March, but you won't give me fillings. You've been doing this to me for years[.] That[']s why I had to get my last 4 teeth pulled – your [] lack of action. Will you please fill my cavaties (sic). I take care of my teeth I use the most expensive toothpaste on commissary & brush 2 times a day but I can't fill my cavaties (sic). I'd like to KEEP MY TEETH PLEASE FILL MY CAVATIES (sic) Please[.]

1  (ECF No. 61 at 53 (emphasis in original); ECF No. 68-2 at 33, 84, 92.) The response
2  stated: "Sorry only doing emergency treatment/extraction[.] Re-kite in 3 month[s] and see
3  where we are at." (*Id.*)
4        On August 5, 2020, Lewis filed a dental kite stating he was brought from ESP to
5  HDSP five months prior for dental, but he has not received fillings due to COVID-19 and
6  asked why he was not receiving treatment. (ECF No. 68-2 at 34, 85, 93.) The response
7  stated: "Because there are people in pain… *It is unfortunate that you came to prison with*
8  *so many dental problems*." (*Id.* (emphasis added).)
9        On August 22, 2020, Lewis filed a kite stating: "My teeth hurt, you've been telling
10  me I'm scheduled since June[.] It's been 2 months are you gonna (sic) see me or what?"
11  (ECF No. 61 at 55; ECF No. 68-2 at 86, 94.) The response stated: "once you (sic) name
12  comes up on the list." (*Id.*) On September 5, 2020, Lewis filed another kite stating: "My
13  teeth hurt they're killing me they've been hurting for months please see me ASAP please
14  its (sic) been months that I've been askin (sic) you please see me ASAP please. (ECF
15  No. 61 at 57; ECF No. 68-2 at 95.) The kite was again stamped stating Lewis would be
16  scheduled. (*Id.*)
17        On September 9, 2020, Lewis was seen by dental and refused an extraction of
18  tooth #13. (ECF No. 68-2 at 102, 117.) On September 10, 2020, Lewis's dental kite stated:

> Why do you guys keep [lying] to me & telling me that you cannot cap my teeth and/or give me a root canal or refer me to someone who can[?] Why do you wanna (sic) insist on systematically extracting all of my teeth? I don't want dentures I wanna (sic) get my teeth fixed not pulled out, please please fix my teeth or refer me to someone who can.

23  (ECF No. 61 at 59; ECF No. 68-2 at 96.) The response stated: "Nobody is lying to you.
24  We do not do root canals or crowns at this institution and we do not refer inmates out for
25  root canals. We only refer to the oral surgeon if it is a complicated tooth that can't be
26  taken out in this office." (*Id.*)
27        On December 6, 2020, Lewis filed another kite stating: "I understand that you enjoy
28  extracting teeth & that is your go to method of dealing with us" but why he could not have

1  his teeth fixed instead of extracted. (ECF No. 61 at 61; ECF No. 68-2 at 97.) The response
2  stated: "We don't 'enjoy extracting teeth'. We don't have materials for caps, root canals
3  or orthodontics. We do fillings and extractions, that's it." (*Id.*) On December 13, 2020,
4  Lewis filed another kite asking that he be referred to an outside specialist for an outside
5  consultation so he "can have [his] teeth fixed & not extracted." (ECF No. 61 at 63; ECF
6  No. 68-2 at 98.) The response stated: "We do not refer to outside specialists for
7  endodontics or prosthodontics." (*Id.*) On December 22, 2020, Lewis submitted yet another
8  request to see a specialist. (ECF No. 61 at 65; ECF No. 68-2 at 30, 82, 99.) The response
9  stated: "this service (caps) is not available at High Desert State Prison." (*Id.*) On
10 December 28, 2020, Lewis filed a kite asking that he be referred to an outside specialist
11 for an outside consultation so he can have his teeth capped. (ECF No. 61 at 63; ECF No.
12 68-2 at 31, 81, 100.) The response stated: "We do not refer to outside specialists for
13 endodontics or prosthodontics." (*Id.*) On July 14, 2021, Lewis was transferred back to
14 ESP from HDSP. (ECF No. 66-2 at 3.)

15      Administrative Regulation ("AR") 631 establishes the policies for dental procedures
16 at all NDOC institutions. (ECF No. 66-3.) AR 631 provides that "arrangements for handling
17 urgent and emergent conditions" should be timely, the Dentist "should examine the inmate
18 and record results of the examination on the inmate's dental record," and that outside
19 consultations and specialists may be contacted "if warranted by dental status." (*Id.*)

20      Likewise, Medical Directive ("MD") 408, establishes the directive pertaining to
21 dental services at all NDOC institutions. (ECF No. 66-4.) MD 408.01(9) states that "[a]ny
22 medically necessary oral surgery procedure determined by the Dentist that cannot be
23 accomplished at the local institution may be referred to outside specialists." (*Id.*) MD
24 408.01(10), goes on to state that "[r]oot canal procedures on anterior teeth shall not be
25 performed when the Dentist determines extracts of the tooth is appropriate." (*Id.*)
26 Furthermore, MD 408.01(11) states that crowns will be considered "when the Dentist
27 determines there is adequate periodontal support, good long-term prognosis, and the
28 posterior tooth cannot be restored with conventional materials." (*Id.*)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**III.   DISCUSSION**

    **A.   Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if they "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

### 1. Analysis

Starting with the objective element, the parties disagree that Lewis's dental treatment constitutes a "serious medical need." (ECF No. 66 at 10.) A serious medical need exists if the failure to treat an incarcerated individual's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429

1  U.S. at 104. Examples of conditions that are "serious" in nature include "an injury that a
2  reasonable doctor or patient would find important and worthy of comment or treatment;
3  the presence of a medical condition that significantly affects an individual's daily activities;
4  or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131
5  (9th Cir. 2000) (citation omitted). Moreover, "[d]ental care is one of the most important
6  medical needs of inmates." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir.1989)
7  (citation omitted). "Prison officials are deliberately indifferent to a prisoner's serious
8  medical needs when they deny, delay, or intentionally interfere with medical treatment."
9  *Id.* at 201 (internal quotations omitted). Delay in providing a prisoner with dental
10 treatment, standing alone, does not constitute an Eighth Amendment violation unless the
11 delay causes harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404,
12 407 (9th Cir. 1985).

13       Lewis's claim arises out of the delay in dental treatment causing serious pain and
14 the need to have several teeth pulled. Further, despite repeated requests, Lewis was
15 never referred to a specialist or provided any explanation as to why he was not referred.
16 Although Lewis received some treatment, there was significant delay in him receiving this
17 treatment. The Ninth Circuit has held that the "existence of chronic and substantial pain"
18 indicates that an incarcerated individual's medical needs are serious, and recognized that
19 a delay as short as three months in receiving necessary dental care can create a genuine
20 issue of material fact. *Hunt*, 865 F.2d at 200–01 (citing *Fields v. Gander*, 734 F.2d 1313,
21 1315 (8th Cir. 1984) (plaintiff claimed jail knew of pain from infected tooth but refused to
22 provide care for up to three weeks)). Therefore, the significant delay in completing his
23 treatment alone creates a genuine issue of material fact. *Id.*

24       Defendants argue that even if Lewis had a serious medical need, there was no
25 delay in his treatment. The evidence shows Lewis was seen in March of 2020 where he
26 received dental treatment and again in July of 2020 where he received dental treatment.
27 Whether the delay in receiving treatment between March and July of 2020 constitutes
28 deliberate indifference is a genuine issue of material fact for the jury to determine. *See*

1  *Hunt*, 865 F.2d at 200–01 (delay as short as three months in receiving necessary dental care creates genuine issue of material fact). Additionally, the fact that Lewis was seen, and even the fact that he was seen numerous times does not, in and of itself, demonstrate a lack of deliberate indifference. *See Edmo v. Corizon*, 935 F.3d 757, 793 (9th Cir. 2019) (citation omitted) ("The provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements."). It is Defendants' burden to demonstrate the absence of a genuine dispute of material fact. Merely concluding Lewis's treatment was adequate because he was seen multiple times is insufficient. Therefore, the motions for summary judgment are denied.

## 2. Personal Participation

Next, Defendants argue that Gutierrez, Avila, and Nicholson did not personally participate in the alleged constitutional violation and should therefore be dismissed. (ECF No. 66 at 11-12.) Defendants Avila and Nicholson responded to Lewis's dental kites and Defendant Gutierrez responded to Lewis's grievance.

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). However, the issue of whether responding to a grievance can rise to the level of personal participation required for a § 1983 claim was addressed by the Ninth Circuit in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the denial of a recommended hip surgery; there was testimony that the warden and associate warden were aware of the grievances, and that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at 989. Defendants argued that there was no evidence in the record that they were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said that their review of the grievance was sufficient to demonstrate that the warden and associate warden were aware of the inmate's serious hip condition and failed to act to prevent further harm so that the warden and associate warden were not entitled to summary judgment based on lack of personal participation. *Id.*

Defendants' responses to Lewis's kites and grievances could be sufficient to meet the personal participation required for a § 1983 suit if, through their own individual actions, they violated the Constitution. However, this is unclear from the record before the Court. At a minimum, there is a genuine issue of material fact as to the extent of each Defendants' participation and whether they had any decision-making authority or ability to resolve Lewis's dental issues (i.e., refer for treatment). *See Jackson, v. State of Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held that merely denying a grievance without some decision-making

1 authority or ability to resolve the underlying issue grieved is not enough to establish
2 personal participation."). Therefore, summary judgment should not be granted to the
3 Defendants on this basis.

### 3. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. (ECF No. 66 at 12-16.) "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Dental care is one of the most important medical needs of inmates." *Hunt*, 865 F.2d at 200 (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). "[T]he [E]ighth [A]mendment requires that prisoners be provided with a system of ready access to adequate dental care." *Id.* (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). It was clearly established in *Hunt* that a delay in providing dental care in the face of untreated pain can amount to deliberate indifference. *Hunt*, 865 F.2d at 200-01. Therefore, Defendants are not entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Lewis's motion for summary judgment, (ECF No. 61), is **DENIED**, and Defendants' motion for summary judgment, (ECF No. 66), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a proposed joint pretrial order by no later than **Tuesday, September 3, 2024**.

**DATED**: August 5, 2024

UNITED STATES MAGISTRATE JUDGE